Roderick **WOODFORD**, Appellant,

v.

**STATE of Indiana**, Appellee.

No. 679S146.

Supreme Court of Indiana.

June 10, 1980.

Raymond J. Guntz, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Roderick Woodford was charged by way of information in Marion Superior Court, Criminal Division I, with robbery while armed, Ind.Code § 35–42–5–1 (Burns 1979 Repl.). He was subsequently found guilty as charged by a jury, and was sentenced to a term of fifteen years imprisonment by the court. Three issues are presented to us for review on this appeal, concerning: (1) the trial court's refusal to grant appellant's motion for discharge at the conclusion of the State's opening statement; (2) the trial court's refusal to grant appellant's motion for a mistrial during the course of redirect examination of one of the State's witnesses; and (3) the sufficiency of the evidence.

On May 11, 1978, Ronald Boone and a friend, Donald Gibson, were in the Varsity Lounge, in the 1500 block of North Pennsylvania Street, Indianapolis. They became involved in a discussion with appellant Woodford and Woodford's companion, Jeffers, which resulted in a heated argument. The discussion became loud enough that the bartender asked them to leave. The four men left the bar and congregated again outside the bar. Boone testified that, at that point, appellant and Jeffers made peace with them and offered to take them somewhere to buy them a beer. The four men then departed in Jeffers' automobile, appellant Woodford and Boone in the back seat, and Gibson and Jeffers occupying the front seat. After driving a short distance, Jeffers stopped the car, and Woodford and Jeffers proceeded to rob and beat Boone and Gibson.

## I.

After the prosecution had concluded its opening statement, the defendant moved for discharge, arguing that the State had failed to show a *prima facie* case in its opening statement. In his opening remarks, the prosecutor had discussed in a general fashion the reasonable doubt burden of proof, the statutory elements of the offense of robbery while armed, and the nature of the weapon used in the crime. He also mentioned the name of the victim, and made a statement to the effect that the victim would testify concerning his experiences during the robbery. He further told the jury that other witnesses, including police officers, would testify about the investigation.

Appellant relies on Ind.Code § 35–1–35–1 (Burns 1979 Repl.), which directs the order in which a trial will proceed. This section provides in part:

"*Presentation of evidence in criminal trials—Arguments of counsel—Instructions to jury.*—The jury being impaneled and sworn, the trial shall proceed in the following order:

First. The prosecuting attorney must state the case of the prosecution and briefly state the evidence by which he expects to support it . . . ."

Appellant contends this statute requires the prosecuting attorney in the opening statement to identify all of the evidence he will present and the witnesses that will testify to that evidence, and indicate what his entire case will be, in such a manner that the defense will be completely apprised of what to expect.

█ A similar question was presented to this Court in *Kincaid v. State,* (1976) 265 Ind. 345, 354 N.E.2d 199. In that case, we held that a defendant could claim reversible error in an opening statement only by showing that he was in some way surprised or misled by the prosecutor's statements. *Carmon v. State,* (1976) 265 Ind. 1, 349 N.E.2d 167; *Alderson v. State,* (1974) 262 Ind. 345, 316 N.E.2d 367. *See Blume v. State,* (1963) 244 Ind. 121, 189 N.E.2d 568. There was no showing, nor even an allegation by the appellant, that he was in any way misled or surprised by any statement made by the prosecuting attorney. As a matter of fact, the defendant obtained ample discovery before trial, which notified him of all the evidence the State intended to present. The court, therefore, properly denied the motion for discharge.

## II.

Ronald Boone, one of the victims, appeared at the trial and testified as a witness for the State. The other victim, Donald Gibson, did not appear at the trial. Boone testified at length on direct examination about the events of the evening, including the robbery and beating of both victims. He identified appellant Woodford as one of the perpetrators. On cross-examination, defense counsel asked Boone where Gibson was, since he obviously was not attending the trial. In fact, several times during cross-examination, reference was made to the fact that Gibson was not there. On redirect examination by the prosecutor, the following exchange occurred:

"Q. Mr. Boone, if you know, why is Mr. Gibson not here today?

A. Well, he was afraid of repercussions, or whatever, for pressing charges against the defendants. His address was published in the paper and that's what he, he said to me, he was afraid to even press charges for that reason.

MR. ITTENBACH: I move for a mistrial for that answer, Your Honor, it is an intentional harpoon by the prosecutor.

THE COURT: On what basis?

MR. ITTENBACH: Well, Your Honor, I think she knew the answer before she asked it.

THE COURT: Pardon?

MR. ITTENBACH: I think she knew the answer before she asked it. The man has just related hearsay which is unsupported by any fact in evidence.

THE COURT: I think you have asked him where he was, so the objection will be overruled, and motion for mistrial overruled."

Record at 235–36. The motion for mistrial was renewed and overruled at the close of the State's case-in-chief.

█ Appellant claims the court should have granted a mistrial because Boone's response prejudicially implied that the defendant was guilty of unrelated and uncharged misconduct or crimes. Further, he argues, the answer in effect made a hearsay identification of the defendant as one of the robbers. We first note that the scope and extent of redirect examination is a matter within the trial court's discretion. *Fortson v. State,* (1978) Ind., 379 N.E.2d 147; *McDonald v. State,* (1976) 264 Ind. 477, 346 N.E.2d 569. We will not disturb the court's ruling absent an abuse of discretion. It is also true that the scope of redirect examination is to be directed to answering any new matter drawn out during cross-examination. Once a party opens a subject on cross-examination, it is permissible for the opposing party to pursue that subject on redirect examination. *Id. See also Howard v. State,* (1976) 265 Ind. 503, 355 N.E.2d 833.

■ Clearly, the trial judge had this rule in mind when he indicated that the questions concerning Gibson's whereabouts opened the general subject of Gibson's absence. While it is true that Boone's answer did include hearsay testimony, it can hardly be said that it had the dire implications appellant now assigns to it. The witness did not state that Gibson had been threatened in any way by the defendant or anyone else. Boone testified that Gibson said he was afraid to press charges and was afraid of repercussions. There was no showing that anything had occurred in the way of other misconduct or crimes which could have given Gibson reasons for having those fears. The only reason indicated was the publication of his address in the newspaper. Moreover, there is no inference that Gibson had identified appellant Woodford. The text of Boone's statement indicated Gibson did not want to press charges or become involved in the matter. Since the defense first asked Boone about his knowledge of the whereabouts of Gibson and made references to Gibson's absence, it was not improper for the prosecutor to pursue this matter further on redirect examination and ask Boone if he knew why Gibson was not present. Appellant was not placed in such grave peril by the hearsay nature of the response that a mistrial should have been granted. Whether the defendant has been subjected to grave peril is determined by the probable persuasive effect of the testimony on the jury's decision. This determination is to be made by the trial judge in considering a motion for a mistrial. *Rock v. State*, (1979) Ind., 388 N.E.2d 533; *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843; *White v. State*, (1971) 257 Ind. 64, 272 N.E.2d 312. We do not find the trial court abused its discretion by overruling the motion for mistrial.

### III.

Finally, appellant argues the evidence is insufficient to sustain the conviction. This contention is based primarily on the merits of Boone's identification of appellant. Boone's first description of his assailant included an estimated weight of 160 pounds.

In fact, Woodford weighed 130 pounds. In addition, Boone's description of his attacker's clothing varied from what Woodford was wearing when he was apprehended around forty-five minutes later.

Woodford and his companion were apprehended by the police at Sixteenth and Pennsylvania Streets, some two miles from the scene of the crime, and held there by the police. Boone was taken to that location and identified appellant Woodford and Jeffers as the perpetrators of the crime. He further identified the vehicle in which they were apprehended as the one in which the crime took place. Boone's wristwatch, which was taken during the robbery, was found in the possession of Woodford and Jeffers. A knife found in the vehicle was identified by Boone as the one used by Woodford against him during the robbery. Boone said he was with Woodford for some time in the bar as well as during the incidents following their leaving the bar and riding in the automobile. Boone said he was absolutely able to identify Woodford as one of the perpetrators.

■ Boone also testified that he had consumed four or five mixed drinks during a two-hour period, and that all four men had passed around a marijuana cigarette in the car. However, Boone's ingestion of these drugs did not render his testimony inadmissible; rather, it merely affected the weight and credibility to be assigned to his testimony by the jury. The police officer at the scene stated that Boone did not appear to be intoxicated when he was questioned by police shortly after the occurrence. While appellant has not directly nor properly raised any issue concerning the propriety of the identification procedures used by the police, we note in any event that Boone gave substantial evidence showing his ability to identify Woodford during his in-court identification testimony independent from the pretrial identification procedure. Appellant's arguments are actually directed toward the weight to be given conflicting bits of testimony. Resolution of these conflicts, of course, was the jury's function. If

the evidence most favorable to the State reveals substantial evidence of probative value from which the jury could have found guilt beyond a reasonable doubt, the verdict will not be disturbed. We will neither reweigh the evidence nor determine the credibility of witnesses. *Faught v. State*, (1979) Ind., 390 N.E.2d 1011; *Harris v. State*, (1978) 268 Ind. 594, 377 N.E.2d 632; *Ruetz v. State*, (1978) 268 Ind. 42, 373 N.E.2d 152. It is clear in this case that there was substantial evidence from which the jury could have found appellant guilty beyond a reasonable doubt.

The judgment of the trial court is affirmed.

All Justices concur.