Derrick A. MACK, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9912–CR–808.

Court of Appeals of Indiana.

Oct. 19, 2000.

John F. Crawford, Crawford & Rader, Indianapolis, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Kostas A. Poulakidas, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

1. Ind.Code § 35–48–4–1.

2. Ind.Code § 35–48–4–6.

3. Mack also claims that the evidence was insufficient to sustain his convictions and that double jeopardy was violated by his convictions of dealing in cocaine and possession of cocaine. With respect to Mack's double jeopardy argument, we note that in *Richardson v. State*, 717 N.E.2d 32, 49 (Ind.1999), our supreme court held that two or more offenses are the 'same offense' in violation of Article I,

## OPINION

MATTINGLY, Judge

■ Derrick Mack challenges his conviction after a jury trial of dealing in cocaine,[1] a Class A felony, and possession of cocaine,[2] a Class D felony. Although Mack raises three issues, we find one dispositive: whether the State's witness' comment that he identified Mack out of a group of people known to deal drugs in the area where Mack was arrested subjected Mack to grave peril.[3]

Reversed and remanded.

## FACTS AND PROCEDURAL HISTORY

Detective Peter Perkins of the Indianapolis Police Department worked an undercover narcotics investigation on August 4, 1997, targeting the neighborhood of 2400 North Alabama Street. Detective Perkins saw five or six black males standing on the corner of 24th and Alabama Streets. He drove up and made eye contact with one of the males, later identified as Mack. Mack approached the undercover vehicle and put his finger to his lips, indicating that Detective Perkins was to remain silent. Mack held out a clear plastic bag containing crack cocaine, and Detective Perkins gave Mack $20.00. The transaction took approximately thirty seconds.

Detective Perkins then drove around the corner and radioed in a description of Mack. Although officers entered the area, they were unable to locate Mack. Approximately ten to fifteen minutes after the transaction, Detective Perkins met assist-

Section 14 of the Indiana Constitution if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Since the same cocaine supported both the dealing and possession charges, the holding in *Richardson* would require that Mack's conviction of possession of cocaine be vacated had we otherwise affirmed the trial court proceedings.

ing officers, who showed him a photo array of twelve African–American males. Detective Perkins identified Mack with 100 percent certainty. (R. at 120, 127.) A warrant was issued for Mack's arrest on September 8, 1997, although he was not arrested and arraigned until almost a year later.

At the trial, Detective Perkins was the only identification witness. He testified that he identified Mack after he was shown a 12–pack photograph of people known to deal in the area of 24th and Alabama. (R. at 104.)

## DISCUSSION AND DECISION

 The trial court erred when it denied Mack's motion for mistrial after Detective Perkins' reference to the pre-assembled photographic array. The trial court has discretion in determining whether to grant a mistrial, and its decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Schlomer v. State*, 580 N.E.2d 950, 955 (Ind.1991). Mistrial is an extreme remedy in a criminal case, which should be granted only when nothing else can rectify the situation. *Id.* To prevail on appeal, an appellant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Id.* Grave peril is measured by the probable persuasive effect on the jury of the challenged action, evidence or misconduct. *Owens v. State*, 714 N.E.2d 250, 252 (Ind.Ct.App.1999).

 Detective Perkins' statement injected into trial the issue of Mack's prior criminal conduct – specifically, that Mack was known to deal drugs in this particular area.[4] In considering whether this warranted the declaration of a mistrial, it is instructive to look at *Garcia v. State*, 509 N.E.2d 888 (Ind.Ct.App.1987). In *Garcia*, prejudicial references to the defendant's collateral criminal conduct that were neither substantiated nor admissible were placed before the jury. In deciding that a mistrial was warranted, we looked at the factors set forth by our supreme court in *White v. State*, 257 Ind. 64, 69, 272 N.E.2d 312, 314–15 (1971).[5]

One *White* factor at issue in the present case is the other evidence of guilt. Officer

---

4. We wish to make clear that this is not a case of prosecutorial misconduct. The prosecutor in the present case did not intentionally elicit the officer's testimony regarding Mack's prior criminal conduct. *See Edwards v. State*, 466 N.E.2d 452, 454 (Ind.1984) (nothing that improper evidence was injected into trial by witness during examination and was not elicited by the State); *but see Brooks v. State*, 560 N.E.2d 49, 58 (Ind.1990) (concluding that prosecutor's deliberate use of the word mugshot during argument constituted prosecutorial misconduct). Furthermore, upon hearing the officer's testimony, the trial court properly instructed the jury to disregard the officer's statement. *See Conley v. State*, 445 N.E.2d 103, 104 (Ind.1983) (Usually a prompt admonition that the testimony is to be disregarded is sufficient to protect the rights of the defendant. (citation omitted)). Nevertheless, reversal is required because we are unable to dismiss the possibility that the tainted testimony, which was the sole evidence connecting Mack to the crime, had a substantial influence on the jury in arriving at its verdict. *See Fox v. State*, 399 N.E.2d 827, 831 (Ind.Ct.App.1980).

5. *White* listed thirteen factors bearing on the necessity of a mistrial. Those were 1) the effect of constitutional provisions, statutes or rules relating to harmless error; 2) the degree of materiality of the testimony; 3) other evidence of guilt; 4) other evidence tending to prove the same fact; 5) other evidence that may cure the improper testimony; 6) possible waiver by the injured party; 7) whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury; 8) the penalty assessed; 9) whether or not the testimony, although volunteered by the witness, was in part brought out by action of the defendant or his counsel; 10) the existence of other errors; 11) whether the question of guilt is close or clear and compelling; 12) the standing and experience of the person giving the objectionable testimony; and 13) whether or not the objectionable testimony or misconduct was repeated. *White*, 257 Ind. at 69, 272 N.E.2d at 314–15.

Perkins was the only witness who testified with respect to Mack's identity. No other law enforcement officers observed the buy, there was no other evidence such as video or audiotape, and no buy-bust marked bills were recovered. As a result, the State's case rested wholly upon Detective Perkins' identification. Tied to this factor is the factor of the degree of materiality of the testimony. Detective Perkins' identification of Mack as someone known to deal drugs in the area of the undercover drug buy was highly material.

The admission of evidence of Mack's collateral criminal conduct was not harmless. Because there was no independent evidence of Mack's guilt, there was a substantial likelihood that the evidence in question played a part in Mack's conviction. *See James v. State*, 613 N.E.2d 15, 22 (Ind.1993). Detective Perkins was the State's only witness. The collateral criminal conduct of being known to deal drugs, whether substantiated by direct reference to a previous conviction or as an unsolicited basis of reference, is the type of harm that *James* sought to avoid. To be tagged as a known drug dealer in this sparse evidentiary situation was not harmless.

The critical importance of Detective Perkins' ability to identify Mack, in combination with the absence of corroborating evidence and the prejudice presumed from being labeled in front of the jury by the only identifying witness a known drug dealer, requires reversal.

Reversed.

BROOK, J., and DARDEN, J., concur.