## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 17 2017, 8:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jill M. Acklin
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Miguel A. Garcia-Cheverez,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 17, 2017<br><br>Court of Appeals Case No.<br>49A02-1606-CR-1469<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Sheila A. Carlisle, Judge<br><br>The Honorable Stanley Kroh, Magistrate<br><br>Trial Court Cause No.<br>49G03-1502-F1-5898 |

**Altice, Judge.**

### Case Summary

[1] Following a jury trial, Miguel Garcia-Cheverez was convicted of three counts of Level 1 felony child molesting. On appeal, Garcia-Cheverez argues that several statements made by the State during closing argument—statements to which he raised no objection—constitute prosecutorial misconduct and that such misconduct rises to the level of fundamental error warranting reversal of his convictions.

[2] We affirm.

## Facts & Procedural History

[3] During the evening of November 1, 2014, Garcia-Cheverez, then twenty-four years old, had been drinking at the home of his uncle and his five cousins, including ten-year-old R.R.A. Later that night, Garcia-Cheverez's uncle permitted Garcia-Cheverez to stay and sleep on the couch because he had been drinking. R.R.A. testified that her father asked her to take a pillow to Garcia-Cheverez. R.R.A. did as her father asked, and when she was returning to her room, Garcia-Cheverez asked her to "[c]ome here." *Transcript* at 72. R.R.A. went over to Garcia-Cheverez, who told her to lie down on the couch. He then removed his pants, but left his "short pants" on. *Id*. Garcia-Cheverez then put his finger into R.R.A.'s vagina. R.R.A. testified that she felt a "little bit" of pressure and pain. *Id*. at 73. Garcia-Cheverez then licked R.R.A.'s genitalia and put his tongue in her vagina. He then instructed R.R.A. to put her mouth on his penis, which she did. R.R.A. told Garcia-Cheverez she needed to use the bathroom and while in there, she washed out her mouth. When R.R.A.

returned, Garcia-Cheverez asked her if she wanted to do more, and R.R.A. said "No." *Id*. at 75. R.R.A. then went back to her room.

[4] R.R.A. was briefly in her room before she decided to go and tell her parents that Garcia-Cheverez had touched her "private part." *Id*. at 77. R.R.A. "was shaking, she was in tears, nervous" when she told her parents what had happened. *Id*. at 278. R.R.A.'s mother followed R.R.A. back to her room, where her mother looked at her genitalia and noticed blood on her vagina and underwear. R.R.A. started crying and said "I am sorry." *Id*. at 48. R.R.A.'s older sister helped their father call the police. After being confronted by R.R.A.'s father, Garcia-Cheverez left the house.

[5] R.R.A.'s mother took R.R.A. to the hospital where she was examined by a sexual assault nurse. The examination showed an area of bruising and a one centimeter laceration to her hymen that extended to her vaginal wall. The nurse observed blood in R.R.A.'s underwear, but did not observe blood on her external or internal genitalia. Male DNA from sperm cells that matched the DNA profile of Garcia-Cheverez was found on R.R.A.'s underwear.

[6] On February 19, 2015, Garcia-Cheverez was charged with three counts of Level 1 felony child molesting and one count of Level 6 felony sexual battery. A jury trial was held on June 9 and 10, 2016. The jury found Garcia-Cheverez guilty of all three child molesting counts and not guilty of sexual battery. On June 24, 2016, the trial court sentenced Garcia-Cheverez to thirty-five years with five

years suspended to probation for each conviction and ordered the sentences to be served concurrently. Additional facts will be provided as necessary.

## Discussion & Decision

[7]     On appeal, Garcia-Cheverez challenges his convictions on grounds of prosecutorial misconduct, pointing to three different statements by the prosecutor during closing argument. Garcia-Cheverez acknowledges that he did not object to the prosecutor's statements or request an admonishment at trial. To avoid waiver, he argues that the prosecutor's statements constitute fundamental error. *See Booher v. State*, 773 N.E.2d 814, 818 (Ind. 2002) Fundamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fail to preserve an error. *See Baer v. State*, 942 N.E.2d 80, 99 (Ind. 2011) (noting it is "highly unlikely" to prevail on a claim of fundamental error relating to prosecutorial misconduct).

[8]     To establish prosecutorial misconduct, we must "determine (1) whether the prosecutor engaged in misconduct, and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected." *Booher*, 773 N.E.2d at 817 (quoting *Coleman v. State*, 750 N.E.2d 370, 374 (Ind. 2001)). The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id*. For

prosecutorial misconduct to constitute fundamental error, it must "make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process [and] present an undeniable and substantial potential for harm." *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002).

[9] First, Garcia-Cheverez argues that the deputy prosecutor improperly asked the jurors to put themselves in the victim's place. The statement, in context, follows:

> [Garcia-Cheverez] put his finger inside her private part, which she clarified, she means vagina when she says that. She felt pressure when he put his finger in there and she felt pain. That's also consistent and clear, but that's consist [sic] with a ten year old's, now 12 year old's experience of that particular act. If you think about it you're not required to abandon your common sense as jurors, not at all. *But if you think about, think about how that would feel, pressure and pain*.

*Id.* at 448 (emphasis supplied).

[10] Garcia-Cheverez directs us to *McBride v. State*, 785 N.E.2d 312 (Ind. Ct. App. 2003), *trans. denied*. We find the prosecutor's statement in this case is distinguishable from the challenged statements in *McBride*.[1] Here, the

---

[1] In *McBride*, the prosecutor asked the jury to consider "[if] this was your son or daughter that was sitting in the cab of the truck, or if this was you, and somebody fired on your child twice like that, what would you call it?" 785 N.E.2d at 320. This court found that the statement was "ill-advised and inappropriate" because it was "potentially misleading" in that the jury was asked to put themselves in the victim's shoes thereby shifting the emphasis to the victim. *Id.* Despite the finding of misconduct, however, the court concluded that such did not rise to the level of fundamental error. *Id.*

prosecutor did not ask the jury to put themselves in the place of the victim, but instead, asked the jury to use their common sense and good judgment to assess whether the victim was credible when she explained that Garcia-Cheverez caused her to feel pressure and pain when he put his finger in her vagina. In other words, the prosecutor was not asking the jurors how they would feel if this was done to them, but rather, whether R.R.A.'s statement was consistent with how a twelve-year old would describe what had occurred to her when she was ten years old. There is nothing improper in this regard with the prosecutor's statement. Garcia-Cheverez has failed to establish error, let alone fundamental error.

[11] Garcia-Cheverez next argues that the prosecutor committed misconduct by personally vouching for the credibility of R.R.A. At trial, R.R.A. testified that Garcia-Cheverez digitally penetrated her, performed oral sex on her, and had her perform oral sex on him. When she came back from the bathroom, Garcia-Cheverez asked her if she wanted to do "more." *Transcript* at 75. During closing argument, the prosecutor stated:

> And then he asked if she wanted to do more, that's what she testified to. The defendant asked her if she wanted to do more. *It's not something a kid comes up with. And the reason it's not something a kid comes up with out of nowhere is because it's what happened. It's what he said to her. It wouldn't occur to a child, oh, let's do more. It doesn't.*

*Id*. at 449 (emphasis supplied).

[12] This statement is not an example of vouching on the part of the prosecutor. *Cf. Schlomer v. State*, 580 N.E.2d 950, 957 (Ind. 1991) (prosecutor's statement, "I believe Detective McGee when he tell[s] us what happened," held improper). The prosecutor did not state her personal opinion as to the credibility of R.R.A. Rather, the prosecutor's statement is a direct reference to very specific testimony from R.R.A. By emphasizing this testimony, the prosecutor was urging the jury to consider the evidence in conjunction with R.R.A.'s age in assessing her credibility. This does not amount to prosecutorial misconduct. Even if such statement constituted improper vouching, Garcia-Cheverez clearly has not met his burden of establishing fundamental error.

[13] Garcia-Cheverez's third argument is that the prosecutor committed misconduct by expressing her personal opinion about his guilt or innocence. *See Ellison v. State*, 717 N.E.2d 211, 213 (Ind. Ct. App. 1999) (citing Ind. Professional Conduct Rule 3.4(e)). He directs us to this statement made by the prosecutor during closing argument:

> We're not asking that you find an innocent man guilty, not at all.
> We're asking you to find that man guilty (pointing) and the
> reason we're asking you to do that is because he is.

*Transcript* at 455.

[14] Even if we assume that the prosecutor's statements in this regard amounts to misconduct, the harm done to Garcia-Cheverez does not rise to the level of fundamental error. Where there is overwhelming independent evidence of a

defendant's guilt, error made by a prosecutor during the closing argument is harmless. *Jerden v. State*, 37 N.E.3d 494, 500 (Ind. Ct. App. 2015). Here, R.R.A. provided compelling testimony that Garcia-Cheverez committed three separate acts of sexual abuse against her. Her testimony was buttressed with evidence that R.R.A. had bruising and a tear in her hymen, there was blood in her underwear, and male DNA from sperm cells that matched the DNA profile of Garcia-Cheverez was found on R.R.A.'s underwear. Garcia-Cheverez does not dispute the evidence against him, which was overwhelming. Thus, even if we assume the prosecutor improperly remarked to the jury regarding her personal opinion as to guilt or innocence, any error is at most harmless and therefore not fundamental.

[15] In sum, Garcia-Cheverez has failed to establish that the prosecutor engaged in misconduct that rises to the level of fundamental error.[2]

[16] Judgment affirmed.

[17] Riley, J. and Crone, J., concur.

---

[2] Garcia-Cheverez presents the same arguments in challenging each of the prosecutor's statements as violating his due process rights under the Fourteenth Amendment. As our Supreme Court has stated, like the federal plain error doctrine, "[o]ur fundamental error doctrine is equal to the task" of reviewing claims not preserved or procedurally defaulted. *Addison v. State*, 962 N.E.2d 1202, 1213 (Ind. Ct. App. 2012). Here, even if the federal standard were applicable, the same result obtains.